# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| **William David Cannon,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:18cv202 (LO/IDD)** |
| | ) | |
| **Armor Correctional Health Services,** | ) | |
| **et al.,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Before the Court are Motions for Summary Judgment filed by three defendants in this lawsuit. William David Cannon ("Cannon" or "plaintiff"), a Virginia inmate acting pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that he suffered deliberate indifference to his serious medical needs at Sussex II State Prison ("Sussex II") when a diseased tooth was not treated promptly or properly. He has named multiple defendants, many of whom have not yet been served. The Motions for Summary Judgment now before the Court will be granted because they establish both that these defendants did not violate Cannon's Eighth Amendment rights and that Cannon failed to exhaust his administrative remedies. Because the latter determination is fatal to Cannon's claim, all defendants will benefit from this ruling: no further attempts to serve the remaining defendants will be made, and the action will be dismissed with prejudice.

## I. Background

In the Amended Complaint, which is the operative complaint in the lawsuit [Dkt. No. 6], Cannon alleges that various medical providers and administrators at Sussex II violated his Eighth Amendment rights when they failed adequately to care for a cavity in his lower right rear molar,

or "tooth #30." Id. §IV, ¶ 1. Ms. Pitter, whom Cannon describes as a "dental administrator/ dental assistant," informed him during a dental appointment on September 11, 2017 that the tooth had a cavity and needed to be filled.[1] Cannon states that he was scheduled for the filling at that same appointment on a date which he does not provide. Id.

On December 11, 2017, Cannon filed an Offender Request with the medical department stating that he had "a real bad cavity ... really been give [sic] me a lot of pain ... it's causing my gums to be painful and hard to eat on my right side." Id. ; Ex. 2. On December 15, 2017, Ms. Pitter responded, "You will be scheduled, however we do not have a dentist at this time." Id.

On December 19, 2017, Cannon submitted another Offender Request to "Dental." Id.; Ex. 1. He expressed gratitude for the Motrin prescription to help with his tooth pain, but pointed out that the tooth continued to decay and the pain remained "almost constantly." As such, he "need[ed] to insist that you schedule me for an 'outside' dentist who can render the appropriate care as soon as possible." He also observed, "Not having a Dentist is not a reason not to render needed care ... not a good legal reason anyway." On December 21, 2017, Ms. Pitter responded, "Mr. Cannon, in DOC you will not be referred out until you are seen by a dentist here at the facility (which we do not have one). I do not know whether you will need a filling or an extraction on that tooth. You must first have an exam by a dentist so you can be evaluated for proper treatment." She noted that Cannon had been seen on September 11, 2017 and was scheduled for a filling, so he had already been evaluated for treatment, but "a dentist must be

---

[1]Plaintiff states that he was told at the same appointment that one of his wisdom teeth was impacted and would require removal by an oral surgeon; however, his allegations of wrongdoing by the defendants concern the delay he allegedly experienced in receiving treatment for the cavity.

2

present to render you this treatment. We do not refer outside appointments for fillings." Id.

On December 22, 2017, Cannon submitted an Emergency Grievance stating, "My tooth is causing me continuous, and at times, excruciating, PAIN! It has been over a week now - a dentist needs to fix my tooth - CONSTANT pain I am in!" On that same date C. Trautz, R.N. responded, "You are prescribed Motrin three times a day." Id. ; Ex. 3.

The following day, Cannon submitted an Offender Request to "Medical Admin.," stating that "[t]here seems to be some confusion in the Dental dept. regarding not securing medical care - proper dental care - for me just because currently there is no dentist here." He explained that he became aware on 9/11/17 that he needed a filing which he still had not received, and by then he was in "constant pain." He asserted that "the Motrin that was prescribed does NOT abnegate your legal responsibility to TREAT my medical injury - which is causing me unnecessary and constant pain." Citing Ogunde v. PHS, Inc., 274 Va. 55 (2007), Cannon opined that he was "sure" that "Armore" would "okay" outside treatment for his tooth "rather than [his] filing a lawsuit for breach of contract and deliberate indifference." On January 16, 2018, Ms. Pitter responded, "Correct we do not have a dentist at this time, you have already been prescribed with meds. You will have to be seen/examed [sic] by a dentist. Please keep in mind there are others ahead of you. Thank you." Id. ; Ex. 4.

Meanwhile, on January 2, 2018, Cannon submitted an Emergency Grievance stating that his "tooth has a HOLE in it and the pain is constant and excruciating! This tooth MUST be fixed - it's been too long. I NEED PAIN meds! (You let my prescription expire and you know I was, and am, in pain.)" The grievance was answered that same day by S. Hicks, R.N., who indicated that the grievance did not meet the definition for an emergency and advised Cannon that he

3

should submit for sick call.  Id. ; Ex. 9.[2]

On January 11, 2018, Cannon filed another Emergency Grievance, advising the "Medical Administrator or Doctor" that the hole in his right lower molar continued to cause him "CONSTANT" and "at times excruciating" pain and stating that he "NEED[ED] pain medication to help with the pain" and a "dentist to fill in the hole."  He further asserted, "This is seriously jeopardizing my health!"  S. Black, L.P.N. advised Cannon that same day that the grievance did not meet the definition for an emergency and to "please submit sick call slip ASAP." Id.; Ex. 10.

On January 13, 2018, Cannon submitted a Regular Grievance complaining that he had been informed on December 20, 2017 that a "medically necessary filling for a tooth" would not be done because Sussex II currently had no dentist.  Since then Ms. Pitter had "vehemently refused " to refer him to an "outside dentist" even though he had been "in constant pain for 6 weeks now because of the hole in my tooth." He asserted that it was "unacceptable" to leave him in constant pain, and opined that the situation "legally constitutes medical malpractice, breach of contract, and negligence."  He requested that the Medical Administrator contact Armor Correctional  Health Services and "get me scheduled to see a Dentist ASAP." Id.; Ex. 6.  On January 23, 2018, Cannon filed an Informal Complaint to Ms. Critton, Sussex II's institutional ombudsman, stating that he had deposited the Informal Grievance in the "grievance box" eight days earlier and he had not yet received a receipt, which failed to comply with DOC policy that grievances should be processed in a timely manner.  Ms. Critton responded that as of January 30, 2018 one grievance from Cannon had been received and logged on January 25 and a receipt was

_____

[2]Beginning with the seventh exhibit to the Amended Complaint, the exhibit numbers assigned by Cannon and those reflected on the court's electronic docket diverge.  The numbers referenced here are those assigned on the electronic docket.

mailed the same day. She advised Cannon that his next action date was February 24, 2018 and that he would be receiving a response before then. Id., Ex.8.

On January 18, 2018, Cannon submitted an additional Emergency Grievance, asserting that the "hole in my tooth (lower molar) is causing me continuous pain - as in non-stop pain! It needs to be filled by a dentist immediately! The hole is allowing food, bacteria, and air to get at the pulp and nerves - you have allowed this to continue for over 4 weeks now! AND - you allowed my pain to expire a week ago! HELP ME!!" D. Williams R.N. responded the same day, "submitted to dental - you were previously on Motrin - /Tylenol 500 mg tabs orally T/D x 5 days ordered - submit an inmate request to see dental hygen [sic]." Id.; Ex. 11.

Also on January 18, 2018, Cannon filed an Informal Grievance to the Assistant Warden, stating that officers in 2C were "completely ignoring and habitually violating DOC Policy regarding Emergency Grievances." He explained that he had handed the Booth Officer an medical Emergency Grievance earlier that day and the officer refused to sign the receipt, stating that she had to give it to Sgt. Evans, and as to 10 p.m. Cannon had no receipt. The following day, Lt. Mills responded that the matter would be looked into. Id., Ex. 16.

On January 24, 2018, Cannon filed another Emergency Grievance, alleging again that the "cavity/hole in my rear molar is causing me constant - constant - pain! Motrin was prescribed for 5 days - now what? I need this tooth filled immediately - or pain meds UNTIL this tooth is fixed. The Dental Dept. knew my tooth needed treatment 9/11/2017 - and nothing is being done. It is effecting [sic] my living conditions." D. Williams R.N. replied that same day that grievance did not meet the definition for an emergency, Cannon's request had been forwarded to the dental department, and Motrin had been re-ordered. Id.; Ex. 12.

5

On February 2, 2018, Cannon was provided dental treatment by Dr. Wells, D.D.S., who placed a temporary filling in tooth #30. Id. at 11, ¶ 9. He asserts, however, that because there had been an open hole in the tooth for 5 months, "a temporary filling is NOT what was medically necessary to treat and fix/cure the toothache. The cavity was NOT treated." Id.

On March 6, 2018, Cannon filed an Emergency Grievance, stating that the lower right molar "is turning BLACK and has been throbbing now for 5 days. Throbbing despite the Tylenol you have me on. This tooth needs to be fixed! The Dental depts negligence has led to my tooth turning Black - AND its painful!" C. Trautz, R.N. responded later that day that Cannon's grievance did not meet the definition for an emergency and advised him that she had "placed a copy of your concerns in the dental department. I will forward your chart to the Doctor as well for review." Id.; Ex. 15.

Cannon states in response to one of the summary judgment motions under consideration that tooth #30 was extracted by an oral surgeon on June 21, 2018. The same oral surgeon extracted both of Cannon's impacted upper wisdom teeth on October 23, 2018. [Dkt. No. 52, ¶¶ 19, 25]

Meanwhile, Cannon filed the instant lawsuit pursuant to 42 U.S.C. § 1983 on February 22, 2018, alleging that he suffered deliberate indifference to his serious medical needs when the cavity in his lower right rear molar was not treated promptly. [Dkt. No. 1] An Order was entered on February 28, 2018, advising Cannon of deficiencies in the complaint and allowing him an opportunity to submit a particularized and amended complaint within thirty days. The amended complaint and exhibits discussed above were filed on April 9, 2018 and accepted as timely [Dkt. No. 6, 17]. Cannon names 15 defendants in the Amended Complaint and seeks an award of

compensatory and punitive damages. In addition to his claim under § 1983, Cannon sets out a claim for breach of contract, contending that he is entitled to damages as a third-party beneficiary of the contract for inmates' health care entered into by the Virginia Department of Corrections and Armor Correctional Health Services, Inc. ("Armor"). [Dkt. No. 6 at ¶ 15-16] He also alleges that Dr. Wells is liable for medical malpractice. Id. at ¶ 9.

After some confusion resulting from the mis-docketing of Cannon's habeas corpus petition pursuant to 42 U.S.C. § 2254 in this action [Dkt. No. 13-16], an Order was entered on August 29, 2018, granting Cannon leave to proceed in forma pauperis in the lawsuit and directing that the complaint be filed. [Dkt. No. 17] Cannon's claim against Armor was dismissed as abandoned, and his claims against defendants Armor President or CEO John Doe, Sgts. A. Evans and J. Branch, Sussex II Warden Tracy Ray, and Virginia Department of Corrections ("VDOC') Director A. David Robinson were dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915A. Id. at 10. The Clerk was directed to send Notices of Waiver and Requests for Waiver of Service of Summons to the remaining ten defendants at Sussex II. Id. at 12. Three of the defendants - Dr. Leo Gangoy, A. Critton, and Ms. Pitter - returned the Notices, and each has filed a Motion for Summary Judgment with a supporting memorandum of law and exhibits. [Dkt. Nos. 38-39, 45-46, 68-69] Each provided Cannon with the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7K. Cannon has filed responses in opposition to each of the summary judgment motions. [Dkt. Nos. 51, 56, 70][3]

---

[3]In a motion regarding service of the complaint, Cannon states that "[d]efendant 'Ms. A. Parks' should be dismissed as irrelevant to the proceedings." [Dkt. No. 20 at 1] Accordingly, the claim against A. Parks is deemed to have been voluntarily abandoned will be dismissed, with prejudice. The named defendants who remain unserved thus are S. Hicks, R.N.; C. Trautz, R.N.; D. Williams, R.N.; Ms. A. Williams; S. Black, L.P.N.; and Dr. Wells, D.D.S.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). "Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Commc's Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

It takes little discussion to conclude that the movants are entitled to summary judgment

for two reasons. First, Cannon's failure to complete the administrative exhaustion of his claims

is fatal to his ability to pursue them in federal court. And second, even if these claims had been

exhausted, the movants have established their entitlement to judgment on Cannon's Eighth

Amendment claims against them.

1. Lack of Administrative Exhaustion

Defendants A. Critton and Ms. Pitter both argue in support of their Motions for Summary

Judgment that Cannon's claims are foreclosed because he failed to exhaust his administrative

remedies prior to filing this federal action. Pursuant to the Prison Litigation Reform Act

("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of

this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted." See 42 U.S.C. §

1997e(a); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the

discretion of the district court, but is mandatory."). The PLRA requires "proper" exhaustion,

which demands "compliance with an agency's deadlines and other critical procedural rules."

Woodford, 548 U.S. at 90-91, 93. In the context of prisoner suits, proper exhaustion provides

prisons the opportunity to correct their errors before being hauled into federal court, reduces the

quantity of prisoner suits by either granting relief at the administrative level or persuading

prisoners not to further pursue their claim in a federal court, and improves the quality of the

prisoner suits that are filed in federal court by creating an administrative record for the court to

reference. Id. The benefits of proper exhaustion are only realized if the prison grievance system

is given a "fair opportunity to consider the grievance" which will not occur "unless the grievant complies with the system's critical procedural rules." Id. at 95; see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). As the Supreme Court has noted, if a prisoner could properly exhaust his claims without complying with the procedural rules of the prison's grievance system, a prisoner who did not want to participate in the prison grievance process could avoid the process altogether by simply filing a prison grievance he knew would be dismissed for procedural deficiency. See Woodford, 548 U.S. at 96. To prevent this type of abuse, this circuit has held that a prisoner cannot exhaust his administrative remedies by failing to follow the required procedural steps, and the proper return of an improperly filed grievance does not serve to exhaust a prisoner's administrative remedies. See Moore, 517 F.3d at 725, 729.

Pursuant to the Operating Procedures (OP's) of the Virginia Department of Corrections ("VDOC"), with a few exceptions all issues are grievable. [Dkt. No. 39, Critton Aff., ¶ 5][4] Specifically pertinent here, denial of dental services is a grievable matter. Id. Cannon, as a Virginia inmate, was required to exhaust the claims he raises in the instant complaint in accordance with grievance procedures provided in VDOC OP 866.1, which provides multiple levels of administrative remedies in the form of inmate grievances. Id., Att. A. Pursuant to OP 866-7.13, an inmate must first attempt to resolve any issues informally. Prison officials must respond to the inmate's complaint within 15 days of receiving an informal complaint. See OP 866-7.13. After seeking informal resolution, an inmate may file a regular grievance within 30 days of the underlying incident or occurrence. See OP 866-7.14. Depending on the subject of the grievance, up to two additional levels of review by higher authorities within VDOC may be

---

[4]Affiant A. Critton is the Institutional Ombudsman Sussex II. Id. ¶ 1.

available if a regular grievance is rejected. See OP 866-7.15. Level I reviews are conducted by the Warden or Superintendent of the institution where the offender is confined, and if he is dissatisfied with that result he can appeal to Level II, where responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services, or Superintendent for Education. For most issues, including Cannon's, Level II is the final level of review. Critton Aff. ¶ 7. Emergency grievances are not steps to exhaustion under VDOC's exhaustion policy. Crayton v. Fleming, No. 7:12cv276, 2012 WL 2527843, at *1 (W.D. Va. June 29, 2012).

Defendant Critton's review of Cannon's grievance file yielded the following information:

On January 23, 2018, Critton received a Regular Grievance from Cannon in which he claimed that he had been informed on December 20, 2017 that a filling for his tooth could not be provided at that time because Sussex II did not have a dentist. Critton Aff. ¶ 8. Cannon stated that he had been in pain for six weeks due to the hole in his tooth, and the dental department had been aware of his need for the filling since September, 2017. Id. Critton rejected the grievance on intake on the ground that the 30-day filing period for a Level I grievance had expired. Id. She circled the dates that Cannon referenced in the grievance - December 20, 2017 and September, 2017 - because both exceeded the 30-day period in which an inmate can file a regular grievance. Id., Att. B. Cannon appealed Critton's decision to the Regional Ombudsman, who upheld Critton's determination. Id.

On January 25, 2018, Critton received a Regular Grievance written by Cannon on December 29, 2017, in which Cannon complained that he was not receiving medical or dental

11

care for a hole in a tooth that was causing him constant pain. He requested that a dentist fix the tooth immediately. Critton accepted the grievance for intake. Critton Aff. ¶ 9. After investigation, Warden Ray issued a Level I grievance response stating that Cannon had been advised by Ms. Pitter in response to an informal complaint submitted on December 27, 2017 that a filling could only be done by a dentist, and Sussex II did not have a dentist at that time. Warden Ray noted that Dr. Wells had provided Cannon with treatment on February 2, 2018 when a temporary filling was placed in the tooth. Cannon was informed that he would be scheduled for restorative treatment for tooth #30, and his grievance was deemed unfounded. Critton Aff., Att. C. Cannon did not appeal the Warden's Level I decision to the Regional Administrator at Level II. Critton Aff. ¶ 9.

Defendant Ms. Pitter is a dental assistant at Sussex II. [Dkt. No. 49, Pitter Aff. ¶ 2] She relies in her Memorandum in Support of Summary Judgment on Critton's affidavit in also asserting that Cannon failed to exhaust his administrative remedies prior to filing this lawsuit, and that as a result the suit is barred. [Dkt. No. 49 at 6-7]

Because Cannon did not file his first Regular Grievance in a timely manner, and failed to appeal the denial of his second Regular Grievance to Level II, he did not properly and fully pursue his administrative remedies. As a result, his claims regarding the failure to provide him with adequate care for his diseased tooth have not been administratively exhausted. See Woodford, 548 U.S. at 90-91, 93 (proper exhaustion demands "compliance with an agency's deadlines"); Shouse v. Bohem, No. 7:12cv00479, 2013 WL 2237784, at *3 (W.D. Va. May 21, 2013) (noting that pursuant to VDOC procedures, appeal of a Level I response to Level II is required for proper administrative exhaustion).

In Cannon's opposition to the summary judgment motions of Pitter and Critton, he argues that he had no further obligation to pursue the grievance process after Dr. Wells placed the temporary filling in his tooth on February 2, 2018. [Dkt. No. 52 at ¶¶ 23-28; Dkt. No. 57 at ¶ 13] As authority he points to OP 866.1 §IV O (2)(a), which states that "[t]he exhaustion of remedies requirement will be met only when the Regular Grievance has been appealed through the highest eligible level without satisfactory resolution of the issue," and he contends that when tooth #30 was given a temporary filling by Dr. Wells on February 2, 2018, a "satisfactory resolution of the issue" was achieved and "his administrative remedies were moot." [Dkt. No. 52 at ¶¶ 26, 28]

Cannon's argument is unavailing. First, his own allegations in his sworn Amended Complaint are in direct contravention of his current assertion. Far from finding the temporary filling installed by Dr. Wells to have been a satisfactory resolution to his complaints of tooth pain, Cannon states in the amended complaint:

> Dr. Wells put a "temporary filling" in tooth #30; a temporary filling is apparently what my chart/file deemed an appropriate treatment, however, as there was an OPEN HOLE in tooth #30 for 5 months, and therein an untreated cavity, a temporary filling is NOT what was medically necessary to treat and FIX/CURE the toothache. The cavity was NOT treated. The tooth, as I noticed on March 6, 2018 ...is now turning BLACK, and has been throbbing in pain, unabatedly, since he end of February. The tooth was obviously diseased and rotten when Dr. Wells put the temporary filling in. As a medical dental professional she has an expressed and implied duty NOT to render treatments that are medically moot. (i.e., like painting a door panel on a totaled car). Therefore, Dr. Wells, M.D. is liable for medical malpractice, deliberate indifference, and breach of contract.

Dkt. No. 6 at ¶ 9. Then, on March 6, 2018, Cannon submitted an emergency grievance in which

13

he complained:

> My lower right molar is turning BLACK and has been throbbing
> now for 6 days. Throbbing despite the Tylenol you have me on.
>
> This tooth needs to be fixed! The dental depts negligence has led to
> my tooth turning black - AND its painful!

Dkt. No. 6, Ex. 15. Patently, Cannon cannot now plausibly claim that he believed that the

temporary filling installed by Dr. Wells constituted a "satisfactory resolution of the issue" about

which he continued to complain.

Moreover, even were that not so, Cannon's theory that he would have been excused from

fully exhausting his claim if no further remedies had been available is misplaced. Pursuant to the

PLRA, exhaustion of administrative remedies is mandatory and is required "regardless of the

relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001).

Exhaustion is required even if the administrative remedies do not meet federal standards, are not

"plain, speedy, and effective," and regardless of whether the relief the plaintiff seeks is available

through the grievance process. Porter v. Nussle, 534 U.S. 516, 524 (2002). Because the

undisputed evidence demonstrates that Cannon failed to exhaust administrative remedies,

defendants Pitter and Critton are entitled to summary judgment on that basis. Id. at 1853 (PLRA

states in "unambiguous terms" that there are "no limits on an inmate's failure to exhaust"); Ross

v. Blake, 136 S.Ct. 1850, 1856-58 (2016) ("... mandatory exhaustion statutes like the PLRA

establish mandatory exhaustion regimes foreclosing judicial discretion."); Anderson v. XYZ

Corr. Health Servs., 407 F.3d 674 (4th Cir. 2005) (courts have no discretion to dispense with

exhaustion requirement in cases where PLRA applies); Davis v. Stanford, 382 F. Supp. 2d 814,

818 (E.D. Va. 2005) (Hilton, J.) (inmate must exhaust administrative remedies even if exhaustion

14

would be futile because those remedies would not provide the relief the inmate seeks), aff'd, 127 F. App'x 680 (4th Cir. May 10, 2005) .

B. No Eighth Amendment Violation

Even if Cannon had administratively exhausted his claims, the undisputed material facts demonstrate that the movants would have no liability for violating Cannon's Eighth Amendment rights. To establish that inadequate medical treatment rises to the level of a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 105. Thus, plaintiff must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, he must allege deliberate indifference to that serious medical need "by either actual intent or reckless disregard," Estelle, 429 U.S. at 106; Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), and he must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (citations omitted). Importantly, a prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

A delay in medical treatment may constitute deliberate indifference. See Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009) (citing Estelle, 429 U.S. at 104-05). A constitutional violation only occurs, however, if the delay results in some "substantial harm" to the patient. Thus, in

addition to alleging that the medical need was objectively serious, the plaintiff must also show that the delay in the provision of medical care resulted in an objectively "substantial harm" in order to establish an Eighth Amendment violation. See Webb v. Hamidullah, 281 Fed. App'x. 159, 166 (4th Cir. 2008) (unpublished decision); Shabazz v. Prison Health Servs., No. 3:10cv190, 2011 WL 2489661, at *6 (E.D. Va. Aug. 9, 2011). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." Shabazz, 2011 WL 2489661, at *6.

1. A. Critton

Cannon alleges that defendant Critton is liable to him under the Eighth Amendment because her denial of his January, 2018 Regular Grievance was based on an "illogical conclusion" and "curtailed - foreclosed really - my ability to get treatment." [Dkt. No. 6 at 15] As noted above, Critton is the Institutional Ombudsman at Sussex II, and Cannon does not allege that she was personally involved in any decision regarding whether or when to provide him with dental treatment or medication. Critton's affidavit confirms that as a non-medical prison official she had no such involvement. [Dkt. No. 39, Critton Aff. ¶ 10] In this circuit, "a medical treatment claim cannot be brought against non-medical personnel unless they were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct." Lewis v. Anemone, 926 F.Supp. 69, 73 (W.D. Va. 1996), citing Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Cannon attempts to refute this principle by arguing that Critton was aware of his pain and suffering and had "the capability and responsibility" to bring the situation to the Warden's attention. [Dkt. No. 57, ¶ 15] Applicable authorities do not support Cannon's theory. It is well

established that Virginia inmates have no constitutionally-protected right to a grievance procedure, Adams v. Rice, 40 F. 3d 72, 75 (4th Cir. 1994), and "there is no liability under § 1983 for a prison administrator's response to a grievance or appeal." Brown v. Va. Dep't of Corr., No. 6:07-CV-00033, 2009 WL 87459, at *13. (W.D. Va. Jan. 9, 2009). "Ruling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation." Id. (quoting George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (alteration in original); accord Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a prison official's "after-the-fact denial of a grievance falls far short of establishing § 1983 liability."). Moreover, "[i]f a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Iko v. Shreve, 535 F.3d 225, 242 (4th Cir. 2008). Here, where it is uncontroverted that Critton knew that Cannon was under the care of prison medical officials, she could have no § 1983 liability for her actions with respect to Cannon's need for dental treatment even if his claims had been administratively exhausted.

2. Ms. Pitter

Cannon alleges that Ms. Pitter, a dental assistant at Sussex II, is liable to him under the Eighth Amendment because she knew he was in severe pain and refused to schedule him to have his tooth treated, did not seek outside treatment for his tooth when no dentist was available at Sussex II, "allowed a rotting, cavity-laden tooth to remain untreated for 5 months, causing serious health risks," and did not call Armor to seek outside treatment on his behalf. [Dkt. No. 6 at 5-6] As discussed above, Ms. Pitter's involvement with the events giving rise to this action consisted of answering three of Cannon's requests for dental treatment, in each instance explaining that Sussex II had no dentist at that time, he had been scheduled to receive a filling,

and that before any decision could be made regarding the other treatment options he requested Cannon would have to be examined by a dentist. [Dkt. No. 6]  Ms. Pitter attests that as a dental assistant, "[c]ontrary to the allegations in the Complaint I do not have authority to initiate referrals for treatment outside of the facility, offer any diagnosis for dental related care, or create and/or set the schedule of the dental provider who offers services at Sussex II State Prison." [Dkt. No. 46, Pitter Aff. ¶ 10]

In order to establish a defendant's liability under § 1983, individual involvement in the alleged constitutional violation must be demonstrated. "[A] plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); see also, Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) ("Liability is personal, based upon each defendant's own constitutional violations.")  Here, Cannon has come forward with nothing to rebut Pitter's showing that she had no authority to determine the course of treatment for Cannon's tooth.  Thus, even if Cannon had administratively exhausted his claim, and even if the failure to treat his tooth more promptly amounted to a violation of the Eighth Amendment, defendant Pitter could have no liability for that harm.

 3. Dr. Gangoy

Dr. Gangoy attests that he is a physician, and at the time pertinent to the complaint he was one of several physicians who rotated through Sussex II. [Dkt. No. 69, Gangoy Aff. ¶ 5]  At that facility the medical and dental departments are separate entities, although physicians within the medical department will sign off on prescription requests from the dental department as warranted.  Id. ¶ 6.  Gangoy has never seen Cannon in person and has not examined or assessed

him. Id. ¶ 7. The exhibits to the Amended Complaint demonstrate that in response to Cannon's

Offender Request of December 11, 2017, in which Cannon complained of suffering pain as the

result of a bad cavity, Dr. Gangoy prescribed Motrin 600 mg for 14 days. Id. ¶ 8. Contrary to

Cannon's allegations that Dr. Gangoy thereafter had direct knowledge of his complaints of pain

over the ensuing four-week period, Gangoy attests that he "was not aware of Plaintiff's

continuing complaints of tooth pain after December 15, 2017 and up until January 24, 2018." Id.

¶ 22. He points out that Cannon himself alleges in the Amended Complaint that none of the

emergency grievances filed during that period were forwarded to a doctor. Id., ¶¶ 17-19, 22.

Moreover, physicians other than Gangoy signed off on the prescriptions Cannon received for

pain medication on January 19, 2018 and January 24, 2018. Id., ¶¶ 20-21.

Under these circumstances, it is apparent that Dr. Gangoy was not deliberately indifferent

to Cannon's serious medical needs. Indeed, the record reflects that on the only occasion when

Dr. Gangoy acquired direct personal knowledge of Cannon's complaints of pain through the

Offender Request filed on December 11, 2017, Gangoy prescribed Cannon a 14-day course of

Motrin on December 15, 2017. In the declaration Cannon filed in response to Gangoy's

summary judgment motion, he asserts that - contrary to his own allegations in the amended

complaint - "at least one of [the unserved nurse defendants] will confirm Dr. Gangoy was made

aware of Cannon's continuing complaints" of pain. [Dkt. No. 71] Such speculation does not

suffice to create a disputed issue of material fact. As Dr. Gangoy has established that he was

never indifferent to Cannon's medical needs "by either actual intent or reckless disregard," he

can have no liability for a violation of Cannon's Eighth Amendment rights, Estelle, 429 U.S. at

106, and his Motion for Summary Judgment accordingly will be granted.

### C. Qualified Immunity

Because Cannon has failed to establish that any of the movants violated his constitutional rights, the Court need not address Pitter's and Critton's reliance on the doctrine of qualified immunity. See Shabazz v. Va. Dep't of Corr., No. 3:10cv638, 2013 WL 1098102, at *9 n. 20 (E.D. Va. Mar. 15, 2013); Long v. Beres, No. 3:10cv532, 2013 WL 139342, at *5 (E.D. Va. Jan. 19, 2013).

### D. Tort and Breach of Contract Claims

To the extent that Cannon seeks to assert tort claims arising under Virginia state law, the Court finds that it is appropriate to dismiss those claims without prejudice. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."). Similarly, dismissal of Cannon's pendant breach of contract claim is warranted. Size, Inc. v. Network Sol., Inc., 255 F. Supp. 2d 568 (E.D. Va. 2003). Accordingly, the malpractice, negligence and breach of contract claims will be dismissed without prejudice pursuant to Fed. R. Civ. P. 12(h)(3).

### IV. Cannon's Pending Motions

Also pending before the Court are several motions filed by Cannon. In a Motion to Amend Complaint [Dkt. No. 26], Cannon seeks to add three additional defendants to the lawsuit and to better allege "the full extent of [his] injuries" and "an accurate request for monetary relief." He also has moved for limited discovery in the form of an Order from the Court directing the Human Resources Department at Sussex II to provide the "full legal names" and addresses of the unserved defendants [Dkt. No. 25], and he requests that the Court make additional efforts to

serve the unserved defendants by mail and by ordering service of process by the Marshal. [Dkt. No. 19, 20, 27]   Because the uncontroverted evidence now before the Court demonstrates that Cannon failed to exhaust his claims administratively, as a matter of law he cannot prevail against any defendant, and it would be a waste of resources to attempt to serve additional defendants because to continue this lawsuit would be futile.   Therefore, Cannon's motions concerning additional efforts at service of process will be denied as moot.   His Motion for Extension of Time to File Responsive Pleadings [Dkt. No. 50] and Motion to Recuse [Dkt. No. 64] will be denied as moot, as the responsive pleading has been filed and the Motion to Recuse has been denied.

## V. Conclusion

For the above-stated reasons, this civil action will be dismissed by an Order to be issued with this Memorandum Opinion.

Entered this ___15th___ day of ___April___ 2019.


Alexandria, Virginia

_____/s/_____
Liam O'Grady
United States District Judge